# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEPHEN C. BALLARD,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| | ) **Civil Action No. 07-1166 (RWR)** |
| **v.** | ) **(ECF)** |
| | ) |
| **CAROL HOLINKA, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR IN THE ALTERNATIVE TO TRANSFER

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) (3) and (6), Carol Holinka, Harrell Watts and Harley Lappin as well as the Federal Bureau of Prisons ("BOP") (collectively "Defendants"), by and through the undersigned counsel, respectfully file this Motion to Dismiss or, in the alternative, to Transfer to the District of Minnesota in response to the complaint filed by Stephen Ballard, Register No. 10720-031 ("Plaintiff"). Federal Defendants respectfully refer the Court to the accompanying memorandum in support of this motion and proposed order.

*Pro se* Plaintiff will take note that if he fails to respond to this Motion to Dismiss, the Court may grant this motion and dismiss his case because of his failure to respond. *See Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

March 24, 2007                                     Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I caused service of the foregoing **Federal Defendants' Motion to Dismiss or, in the Alternative, Transfer** to be made by mailing a copy thereof to:

Stephen C. Ballard
R# 10720-031
F.C. I. Waseca
POB 1731
Waseca, MN 56093

on this 24th day of March, 2008

_/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEPHEN C. BALLARD,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| | ) **Civil Action No. 07-1166 (RWR)** |
| **v.** | ) **(ECF)** |
| | ) |
| **CAROL HOLINKA, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## OR IN THE ALTERNATIVE TRANSFER

Pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) (3) and (6), Carol Holinka,

Harrell Watts and Harley Lappin as well as the Federal Bureau of Prisons ("BOP") (collectively

"Defendants"), by and through the undersigned counsel, respectfully file this Motion to Dismiss

or, in the alternative, Transfer to the District of Minnesota in response to the complaint filed by

Stephen Ballard, Register No. 10720-031 ("Plaintiff").

## I. INTRODUCTION AND SUMMARY

Defendants respectfully file this Motion to Dismiss or, in the alternative, for Transfer to

the District of Minnesota in response to Plaintiff's complaint.  Defendants move to dismiss the

complaint because sovereign immunity bars Plaintiff's action against the BOP.  Furthermore,

venue is lacking in this District.  This Court lacks personal jurisdiction over Defendant Holinka.

Plaintiff fails to state a claim against the Defendant Lappin because *Bivens*[1] liability cannot hinge

on *respondeat superior*.  Finally, Plaintiff fails to state a claim because his First Amendment

rights have not been violated and, even if they had, his claims are barred by qualified immunity.

---

[1]     *Bivens v. Six Unknown Agents of Fed. Bur. of Narc.*, 403 U.S. 388 (1971).

## II. FACTUAL BACKGROUND

On June 29, 2005, Plaintiff was convicted of conspiracy to distribute and possession with intent to distribute 500 grams or more of a mixture containing methamphetamine and possession of ammunition by a felon in violation of 18 U.S.C. § 922 (G)(1). Plaintiff is currently serving a sentence of seventy-eight months followed by three years of supervised release. He is scheduled to be released on April 26, 2009.

Plaintiff brings this *Bivens* action alleging that his First Amendment rights were violated when Defendants denied him his July 2006 issue of *American Curves*. He describes *American Curves* as a "sports magazine swimsuit issue," which "contains depiction of female breasts on an occasional, non-routine, or irregular basis." *Id*. at ¶¶ 13-14. Specifically, he complains that in accordance with the Ensign Amendment, the prison administrators rejected the July 2006 issue of *American Curves*, because it contained "material [which] is sexually explicit or features nudity."[2] *Compl*., at ¶ 5. Plaintiff contests the BOP's conclusions. *Id*. at ¶ 7-11. He contends that prior to July 2006, the prison mail room staff had rejected three issues of *American Curves*. *Id*. at ¶12. He contends that the depicting of breasts are not prohibited by the Ensign Amendment as prison staff approved and distributed the October 2006 issue of the Esquire magazine which had those depictions. *Id*. at ¶¶14-17.

Plaintiff alleges that he has received other issues of the magazine after July 2006. *Id*. at ¶29. Thus, Plaintiff challenges the BOP's enforcement of the Ensign Amendment to preclude one issue of a magazine that historically did not depict nudity on a routine or regular basis. *Id*. at

---

[2]    The Ensign Amendment prohibits the use of federal funds for the distribution of pornographic materials. A more in depth discussion of the Ensign Amendment can be found in Section IV(A) of this Memorandum.

2

¶¶30-36.   He contends Defendants acted with malice and reckless disregard of Plaintiff's First Amendment rights when they enforced the regulation regarding rejection of magazines with sexually explicit depictions on a routine or regular basis to a single issue of an authorized magazine.  *Id*. at ¶27.  Plaintiff contends he filed an administrative remedy request regarding the denial of his magazine and Warden Holinka denied such a request because it contained "photographs of exposed female breasts on page 40." *Id*. at 22-23.[3]  Plaintiff further alleges that Defendant Harrell Watts denied his appeal for the same reason.  *Id*. at 24-25.  Accordingly, Plaintiff contends that Defendants Warden Holinka, Harrell Watts and Harley Lappin "enforced or acquiesced" in the rejection of the *American Curves* magazine issue.  *Id*. at ¶ 19-21.

On another front, Plaintiff also challenges Warden Holinka's policy of limiting the number of stamps an inmate can purchase per week as violative of the First Amendment. *Id*. at ¶40.  He contends BOP policy allows inmates to purchase 60 stamps per week and the Warden's limitation to 20 stamps per week is arbitrary and capricious.  *Id*. at ¶43. He contends he attempted to purchase more than 20 stamps in one week and although he was given permission to do so, the paperwork had not been processed and he was unable to make the purchase.  *Id*. at ¶¶44-46.  He contends Warden Holinka violated his First Amendment right when she limited the number of stamps an inmate could buy per week.

## III. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v.*

---

[3]     Plaintiff exhausted his administrative remedies pursuant to 42 U.S.C. §1997e(a).

3

*Twombly*, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id*.

## IV. ARGUMENT

### A.    SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST THE BOP AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Congressional consent to suit in this Court, a waiver of the government's traditional immunity, must be explicit and strictly construed. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). Absent clear congressional consent to entertain a claim against the United States, the District Court lacks authority to grant relief. *United States v. Testan*, 424 U.S. 392, 399 (1976). "Sovereign immunity is jurisdictional

4

in nature." *Meyer*, *supra*, 510 U.S. at 475.  This Circuit has explicitly held that sovereign

immunity bars the BOP from liability.  *Galvan v. Fed. Prison Ind.*, 199 F.3d 461, 462 (D.C. Cir.

1999).  An action for damages based upon *Bivens* can only be maintained against individual

defendants and cannot be brought against the United States or an agency thereof.  *FDIC v.

Meyer*, 510 U.S. 471 (1994).  Therefore, Plaintiff's *Bivens* claims against the BOP and individual

Defendants in their official capacities fails and his complaint should be dismissed accordingly.

## B.    THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT HOLINKA

Although Plaintiff attempted to serve Warden Holinka in her personal capacity, it does

not appear he did so successfully.  *Dkt. Ent*. 5.[4]  Nevertheless, even if Plaintiff did successfully

serve Warden Holinka in her personal capacity, in personam jurisdiction would still be lacking in

this case because Plaintiff has not shown that she is a residents of the District of Columbia.

### 1.    Plaintiff's Burden

Plaintiff bears the burden of pleading the facts necessary to substantiate in personam

jurisdiction in this Court.  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).  As

explained by this Court in *Edmond v. U.S. Postal Service*, 727 F. Supp. 7, 10 (D.D.C. 1989),

*aff'd* in part and *rev'd* in part on other grounds, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential
> jurisdictional facts and must carry throughout the
> litigation the burden of showing that he is properly
> in court.  "If his allegations of jurisdictional facts
> are challenged by his adversary in any appropriate
> manner, he must support them by competent proof.

---

[4]    Nor did Plaintiff properly serve Defendants Lappin and Watts personally except to
the extend that those Defendants may have designated others to receive personal service on their
behalf.

5

> And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Plaintiff has not an cannot please sufficient facts to establish personal jurisdiction over Warden Holinka in this District.

### 2.    D.C. Code §13-423, the "Long Arm" statute

*In personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia. *Crane v. Carr*, 814 F. 2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's–
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5) having an interest in, using, or possessing real

> property in the District of Columbia;
> (6) contracting to insure or act as surety . . . ; or
> (7) marital or parent and child relationship. . . .
> (b) When jurisdiction over a person is based solely
> upon this section, only a claim for relief arising
> from acts enumerated in this section may be asserted against him.

In this case, Plaintiff's pleading could not establish proper *in personam* jurisdiction in this court under § 13-423; *Crane* 814 F.2d at 762. First, it is undisputed that Defendant Holinka does not reside in this District. *Dkt Ent*. 5. On the contrary, Defendant Holinka resides in locations outside of this District where Plaintiff is incarcerated.

Moreover, Plaintiff does not allege that Defendant Holinka transacted any business or contracted to supply services in the District of Columbia or caused any tortious injury in the District of Columbia. Moreover, *in personam* jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long arm" statute because the Plaintiff does not and cannot claim that the Defendant Holinka caused him tortious injury within the District of Columbia. There is no *act* or *injury* alleged to have been accomplished within the District of Columbia by Defendant Holinka. Any injury to Plaintiff necessarily took place outside the District of Columbia, since he was never housed here and all allegations in this action pertain to his incarceration in various prisons outside this District. Therefore, this Court would lack personal jurisdiction over Warden Holinka for activities taking place outside the District of Columbia.

### 3.    In Personam Jurisdiction Requires "Minimum Contacts"

In order for the District Court for the District of Columbia to have personal jurisdiction over a non-resident defendant, jurisdiction must be proper under both the District of Columbia long-arm statute and consistent with the demands of due process. *United States v. Ferrara*, 54

F.3d 825, 828 (D.C. Cir. 1995); *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). "Since the

District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause

allows, *Mouzavires v. Baxter*, 434 A.2d 988 (D.C. 1981) (*en banc*), *cert. denied*, 455 U.S. 1006

(1982), personal jurisdiction exists when the defendant has purposely established minimum

contacts with the forum state and when the exercise of jurisdiction comports with 'traditional

notions of fair play and substantial justice.' *Asahi Metal Indus. Co. v. Superior Court of Cal.*,

480 U.S. 102 (1987)." *Wiggins v. Equifax Inc.*, 853 F. Supp. 500 (D. D.C. 1994). "Plaintiff's

claim for relief must arise from the defendants' contacts with the District of Columbia and his

'claims must bear some relation to the acts in the District that are relied upon to confer personal

jurisdiction.' [D.C. Code] § 13-423(b). *Bayles v. K-Mart Corp.*, 636 F. Supp. 852, 854 (D.D.C.

1986)." *Id*. at 502.

Again, the burden would be on the Plaintiff to establish that this Court could exercise

personal jurisdiction over a non-resident Defendant consistent with the Due Process Clause.

*Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D. D.C. 1998). Plaintiff in this case has wholly

failed to allege such facts, and the allegations against Defendant Holinka does not establish

"minimum contacts" necessary to confer personal jurisdiction upon the District Court for the

District of Columbia. The mere fact that some Defendants are employees of the BOP and the

Central Office of that agency happens to be in Washington, D.C., is insufficient to establish the

requisite "minimum contacts" with the District of Columbia. *Cameron v. Thornburgh*, 983 F.2d

235, 256 (D.C. Cir. 1993); *James v. Reno*, et al., No. 99-5081, 1999 WL 615084 (D.C. Cir. Jul.

2, 1999) (Inmate's security classification and transfer request made in Texas; both federal prisons

at issue located in Texas; no injury suffered in the District of Columbia; mere fact that White and

Snider are employees of the Bureau of Prisons based in D.C. insufficient to establish requisite

"minimum contacts" with District); *Meyer v. Reno*, 911 F. Supp. 11, 14 (D.D.C. 1996) (Bureau

of Prisons employee who works at FCI Memphis, Tennessee and three Florida State Attorneys

not alleged to conduct any business or make any contracts for services and no injury alleged to

have been suffered in the District of Columbia, so court cannot exercise jurisdiction over them).

The presence in the District of Columbia of the defendants must be "continuous and

systematic" and relative to the claim to meet the "minimum contacts" requirement. *International

Shoe Co. v. Washington*, 326 U.S. 310 (1945). Here, the non-resident Defendant Holinka lacks

the requisite minimum contacts with the District of Columbia because the operative facts of any

claim herein arose in Minnesota. Therefore, the motion to dismiss Defendant Holinka under

Rule 12(b)(2) should be granted, and she should be dismissed from this suit.

### C.    PROPER VENUE IS LACKING IN THIS DISTRICT

Plaintiff's *Bivens* claims must also be dismissed pursuant to Rule 12(b)(3) for improper

venue. Venue is governed by 28 U.S.C. § 1391(b). *Stafford v. Briggs*, 444 U.S. 527, 544 (1980);

*Cameron v. Thornburgh*, 983 F.2d 235, 257 (D.C. Cir. 1993); *Pollack v. Meese*, 737 F. Supp.

663, 665 (D.D.C. 1990). Under section 1391(b), a cause of action alleging constitutional claims

may be brought only in a judicial district where: (1) any defendant resides if all defendants reside

in the same state; (2) a substantial part of the events or omissions giving rise to the claim

occurred; or (3) any defendant may be found if there is no district in which the action may

otherwise be brought. 28 U.S.C. § 1391(b).

In the instant case, venue is not proper in this District of Columbia under 28 U.S.C. §

1391(b) because none of the Defendants reside in the District of Columbia and a substantial part

9

of the alleged events or omissions giving rise to Plaintiff's claims did not take place in the

District of Columbia but rather in Minnesota. Because venue is improper, the Court should

dismiss plaintiff's constitutional claims under Fed. R. Civ. P. 12(b)(3).[5]

### D.    RESPONDEAT SUPERIOR PRECLUDES CLAIMS AGAINST DIRECTOR LAPPIN IN HIS INDIVIDUAL CAPACITY

The Plaintiff contends that Defendant Lappin violated his First Amendment rights by

enforcing the rejection of the American Curves magazine. Compl. at ¶ 27. Supervisory

personnel may not be forced to defend a *Bivens* action under the doctrine of respondeat superior.

*Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C.

Cir. 1993). Under the doctrine of *respondeat superior*, supervisory officials named as defendants

cannot be held accountable for the actions of their subordinates unless they were personally

involved, or had knowledge of and approved, the unconstitutional acts. *Id*. The supervisor's

involvement in allegations made by the plaintiff must rise to the level of reckless or deliberate

indifference to the rights of the plaintiff protected under the United States Constitution. Plaintiff

must show that a defendant personally committed acts which violated his constitutional rights.

*Monell v. New York Dep't of Social Serv.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, *supra*. To

maintain a suit for damages against Defendant Lappin in his individual capacity, Plaintiff must

allege, and ultimately prove, that Lappin was directly and personally responsible for the alleged

constitutional violation. *See Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987).

---

[5] Under 28 U.S.C. § 1406(a), if the venue is improper, the Court may transfer the case to a district where it could have been properly brought in the interest of justice. However, this case would be subject to dismissal no matter where it is transferred because Plaintiff fails to state a claim upon which relief can be granted.

The Plaintiff is required to plead facts sufficient to establish that Harley Lappin was personally involved or had knowledge of the alleged constitutional violations and failed to take any action. The Plaintiff has failed to assert any facts that would support a finding of liability against this supervisory defendant. Thus, this Defendant Lappin must be dismissed based on the doctrine of respondeat superior because he is being sued based on his supervisory role as BOP director. Plaintiff's conclusory allegations do not establish a liability under *Bivens*. Harley Lappin is the BOP national director and is not directly involved in the day to day operations of the correctional institutions.

**E.     THE PRISON ADMINISTRATORS' POLICY OF RESTRICTING THE NUMBER OF STAMPS INMATES CAN PURCHASE DOES NOT VIOLATE THE FIRST AMENDMENT**

**1.     BOP Policy on Postage Stamps**

The BOP has issued a policy to "provide inmates an opportunity to purchase articles or services not issued or delivered as basic care by the institution or of a different quality." Program Statement 4500.05. There are "unique risks associated with the management of postage stamps in a correctional environment." *Id.* at Chapter 3, page 3e. The BOP has imposed limitations on the sale of postage stamps in prisons in the following manner:

> The Commissary may sell a maximum of five different denominations of stamps. Two of the five denominations must allow inmates to mail first-class letters and certified letters. If needed, denominations in excess of these two shall be determined by local needs and approved by the Warden (not to exceed the five maximum). In addition to other denominations of stamps, the Commissary may stock pre-stamped international postage envelopes (i.e., Air-O-Grams). The Commissary must have available sufficient stamp

11

denominations to allow mailing of domestic letters, letters in excess of one ounce but not requiring an additional first-class stamp, foreign mail, packages, registered or certified letters or packages, and any other charges attributable to mail privileges. Ordinarily, the Commissary shall sell no more than 60 postage stamps (for first-class, domestic, one-ounce mailing), or the equivalent per Commissary visit.  An exception may be made where visits are limited to one per week or less, in which case, the Associate Warden may authorize additional purchases of stamps.

*Id*. at 9(4).

### 2.    The Institution's Restriction on the Purchase of Postage stamps are Reasonable under the Turner Test[6]

The institution's restriction on inmate purchase of  postage stamps passes constitutional muster.  Prison administrators can impose regulations on the use of postage that are reasonable. *See King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987)(reversing dismissal of the postage claim because it had an adverse effect on plaintiffs' 6th Amendment rights).  Applying the *Turner* standard to this regulation, it becomes clear that the regulation is reasonable and does not violate Plaintiff's First Amendment rights.  First, contrary to Plaintiff's assertion that it is arbitrary and capricious, the restriction is related to a legitimate governmental interest.  As explained in the policy, the use of postage stamps in prison creates risks.  Program Statement 4500.05(e). Inmates can use stamps as currency for gambling, payment of sexual favors, exchange of goods, and other illicit activities. *See Luster v. United States*, 2002 WL 418010, 1 (2002); *Kaestel v. Lockhart*, 746 F.2d 1323, 1324 (8th Cir. 1984).  Theft, extortion and the violence associated with

---

[6]      *Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that a prison regulation impinging on inmates' constitutional rights is valid "if it is reasonably related to legitimate penological interests....").

such items of value in the prison setting can readily become a serious problem.  Thus, the postage limitation advances the government's interest in preserving prison security.

Second, Plaintiff has other alternative means of expression.  He is allowed 20 stamps, but he is also allowed access to the phones and visitation.  In addition, prison administrators have instituted a procedure by which inmates can obtain more than 20 stamps per commissary visit if there is a valid need.  The inmate has not availed himself of this procedure.  See Attachment 1. As a result, this prong of the *Turner* test has also been met.

Third, in light of inmates' use of stamps as currency, thefts, extortion and the violence associated with such items of value in the prison setting can have a serious impact on prison staff, resources, and other inmates, prison administrators decided to reduce the number of stamps inmates are allowed to purchase per commissary visit to twenty stamps.  *Luster, supra.*

Finally, 'the absence of ready alternatives' is evidence of the reasonableness of a prison regulation.  At least one circuit court has examined a regulation involving a limitation on the number of postage stamps inmates are allowed to possess. In *Van Poyck v. Singletary*, 106 F.3d 1558 (11th Cir. 1997), the Eleventh Circuit Court was presented with a challenge to a prison regulation which limited the number of stamps inmates could possess to 20, and the number of stamps an inmate could receive from outside to 15.  The Eleventh Circuit concluded that "prison rules that regulate prisoner possession of postage and limit postage materials provided by the prison do not violate the law." *Id.* at 1558-59.  The Court rejected the plaintiffs' arguments that the rules restricted their ability to communicate with people outside the prison and violated the First Amendment. *Id.* at 1559.  The Court explained "[w]e find this challenge against the prison rules limiting the quantity of stamps they can possess meritless.  We agree with the Eighth

13

Circuit that a prison policy preventing inmates from possessing loose postage stamps is directly related to the legitimate security interest of eliminating 'the exchange of contraband among inmates.'" *Id.* (quoting *Little v. Norris*, 787 F.2d 1241, 1243 (8th Cir. 1986)). Thus, the limitation on the number of stamps inmates can possess is justified by security concerns in the institution. In light of these reasons, plaintiff has failed to establish the basis to support a finding of liability against the individual defendants. As a result, this case should be dismissed.

**F.     QUALIFIED IMMUNITY PRECLUDES THIS ACTION AGAINST DEFENDANTS LAPPIN, WATTS, AND HOLINKA IN THEIR PERSONAL CAPACITIES**

### 1.     The Ensign Amendment and BOP Regulations Pass Constitutional Muster[7]

Congress passed the Ensign Amendment as part of the Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, § 614. The Ensign Amendment basically prohibited the use of federal funds for the distribution of sexually explicit materials. More specifically, the Ensign Amendment prescribed that "no funds may be used to distribute or make available to a prisoner any commercially published information or material that is sexually explicit or features nudity." 28 U.S.C. § 530C(b)(6).

In order to carry out the Congressional mandate, the BOP promulgated regulations, which are codified in 28 C.F.R. § 540.72. Specifically, the regulations explain:

> (a)     When commercially published information
> or material may not be distributed by staff or made
> available to inmates due to statutory restrictions (for
> example, a prohibition on the use of appropriated

---

[7]     The D.C. Circuit has examined and upheld the Ensign Amendment and BOP regulations in light of the First Amendment reasonableness test. *Amatel v. Reno*, 156 F.3d 192 (D.C. Cir. 1998) (relying on *Turner v. Safley*, 482 U.S. 78 (1987)).

funds to distribute or make available to inmates information or material which is sexually explicit or features nudity), the Warden or designee shall return the information or material to the publisher or sender. The Warden or designee shall advise the publisher or sender that an independent review of the decision may be obtained by writing to the Regional Director within 20 days of receipt of the notification letter. Staff shall provide the inmate with written notice of the action.

(b) Definitions. For the purpose of this section:

(1) Commercially published information or material means any book, booklet, pamphlet, magazine, periodical, newsletter, photograph or other pictorial depiction, or similar document, including stationery and greeting cards, published by any individual, organization, company, or corporation which is distributed or made available through any means or medial for a commercial purpose. This definition includes any portion extracted, photocopied, or clipped from such items.

(2) Nudity means a pictorial depiction where genitalia or female breasts are exposed.

(3)Features means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

 The BOP also issued a policy statement to provide guidelines to prison staff about the processing of correspondence addressed to inmates. In so doing, the BOP "encourages correspondence that is directed to socially useful goals." Program Statement 5265.11. The Warden has the discretion to reject correspondence "if it is determined detrimental to the

15

security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity." *Id*. at 11.  The policy then lists the kinds of correspondence the Warden may reject, including mail which contains one of the following:

> (5) Threats, extortion, obscenity, or gratuitous profanity; . . .
>
> (7) Sexually explicit material (for example, personal photographs) which by its nature or content poses a threat to an individual's personal safety or security, or to institution good order;
> Nude or sexually suggestive photos (individual prints or copies as opposed to those from publications) present a special concern for personal safety, security, and good order.  This is particularly true when the subject is an inmate's relative, friend, or acquaintance.  For these reasons, ordinarily, an inmate shall not be permitted to receive through the mail a personal photograph in which the subject is nude, displays genitalia, or female breasts, or when the photo depicts sexually suggestive acts such as intercourse, fellation or sodomy.  The exclusion of this, or similar materials shall be determined on the basis of the standard of whether the material would be detrimental to an individual's personal safety or security, or to institution good order, if it were in the inmate's possession.  For purposes of this section, clippings from publications are considered under this rule on correspondence.

> *Id*. at 11-12 (emphasis added).

The Amendment and implementing regulation are targeted to the receipt by inmates of materials which feature nudity or are sexually explicit.  To implement the congressional mandate, the BOP regulations define the Amendment's key terms.  Materials which are "sexually explicit" as defined by 28 C.F.R. § 540.72(b)(4) or feature "nudity" as defined in 28 C.F.R. § 540.72(b)(2) are rejected by BOP institution staff when mailed into inmates.

Weighing the constitutionality of the Ensign Amendment and the BOP's compliance therewith, the D.C. Circuit in *Amatel* applied the *Turner* factors deferring to Congress' reasoned judgment that the Amendment was legitimately related to inmate rehabilitation, the Amendment left sufficient alternatives for inmates to exercise their rights, the Amendment addressed prison safety and that there were not de minimis means of accommodating the inmates' rights. *Amatel*, 156 F.3d at 192-202. Regarding Plaintiff's argument that he has been permitted to receive other issues of *American Curves*, that argument fails because *Amatel* gives the Warden broad discretion to further the interest set forth in the Amendment. In other words, the most important consideration is the first prong of the *Turner* test, i.e. whether a legitimate penological interest furthered. *Wolf v. Ashcroft*, 297 F.3d 305, 307 (3d Cir. 2002). Under *Amatel's Turner* analysis, Warden Holinka is given broad discretion to effectuate the Congressional goal of inmate rehabilitation, which incorporates the authority to refuse publications on an issue-by-issue basis. Moreover, Plaintiff's argument fails because the Wardens' issue-by-issue approach is less stringent than suggested in the *Amatel* analysis. The fourth prong of the test enables prison authorities to forgo an issue-by-issue method if it would prove too much of a burden on authorities. *Amatel*, 156 F.3d at 201. Here, the Warden's approach is more permissive and enables Plaintiff to receive some issues of *American Curves* but not others that the Warden determines to be prohibited by valid regulations.

### 2.    Defendants are Entitled to Qualified Immunity

Individually-named federal Defendants sued for money damages for violations of constitutional rights are immune from suit under the doctrine of qualified immunity if, inter alia, the complaint fails to allege facts that give rise to the violation of a clearly-established

constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). *See also Mitchell v. Forsyth*, 472 U.S. 511, 526(1985)("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

The Supreme Court has repeatedly stressed the desirability to resolve the qualified immunity issues at the earliest stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 230 (1991); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985). In fact, "[u]ntil the threshold of immunity is resolved, discovery should not be allowed." *Siegert v. Gilley*, 500 U.S. 226, 231(1991).

The District of Columbia Circuit Court established a two-prong test to review the applicability of the qualified immunity defense. First, the court will look at whether "the facts show the officer's conduct violated a constitutional right." *Lederman v. United States*, 291 F.3d 36, 46 (D.C. Cir. 2002) (citations omitted). Defendants are only liable "if they knew, or were unreasonable in not knowing, that their behavior violated the Constitution." *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C. Cir. 1991). Second, the Court will look at whether the right was clearly established. In assessing whether a particular right is sufficiently established to place a defendant on notice that his conduct was unconstitutional, the D.C. Circuit looks to decisions of "the Supreme Court, the District of Columbia Circuit, and, to the extent there is a consensus, other circuits [that] have spoken clearly on the lawfulness of the conduct at issue." *Butera v. District of Columbia*, 235 F.3d 637, 652 (D.C. Cir. 2001).

18

Examination of the case law and statutes reflect that defendants did not violate any clearly established right Plaintiff enjoyed.  Inmates do not have a First Amendment right to receive sexually explicit materials or to have unlimited postage stamps while in prison.  *Van Poyck*, *supra*.  The Plaintiff has failed to articulate any sustainable allegations against Defendants. Moreover, Defendant Watts is entitled to qualified immunity to the extent Plaintiff's claims are premises entirely on his role in the BOP's internal appeals process.  *Neal v. Watts*, 2008 WL 748321, *3-*4 (D.D.C. 2008).  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

### F.    THE PLAINTIFF IS NOT ENTITLED TO RELIEF

#### 1.    Plaintiff is not Entitled to Declaratory Relief

Plaintiff seeks a declaratory judgment holding that a magazine that does not contain nudity in at least 50% of its issues does not fall within the prohibition in BOP policy. Compl. at VI. Relief, E.  The statute governing prospective relief in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C §3626(a)(1), puts substantial limitations on the issuance of this type of relief.  Specifically, the Act provides, "prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in *Porter v. Nussle*, 534 U.S. 516 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right."  *See also Thompson v. Gomez*, 993 F.Supp. 749, 754-55 (N.D.Cal.1997), rev'd on other grounds in *Gilmore v. People of the State of*

19

*California*, 220 F.3d 987, 1005 (9th Cir. 2002).  This mandatory requirement must be more than

mimicking the language of the statute, and is discussed in *Cason v. Seckinger*, 231 F.3d 777

(11th Cir. 2000); *see also, Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002).

The statute further states, "[t]he court shall give substantial weight to any adverse impact

on public safety or the operation of a criminal justice system caused by the relief."  Any order

that this court might issue with respect to the Plaintiff's access to nudity and pornography within

the institution directly implicates this portion of the PLRA, in that it will have an adverse impact

on the BOP's authority to reject magazines which depict nudity to the inmate population and

properly allocate the available resources, as well as the operation of the federal prison system.

Plaintiff is not entitled to review all publications he wishes, including American Curves.  The

BOP clearly acted within the powers delegated by Congress and rejected magazines that satisfy

the criteria for nudity under the Ensign Amendment and BOP regulations.  Thus, Plaintiff is not

entitled to any remedy as his rights were not violated by the actions of the BOP or its employees.

### 2.    The Plaintiff is not Entitled to Injunctive Relief

The Plaintiff is seeking a preliminary and permanent injunction against all defendants

barring them from rejecting magazines under the Ensign Amendment.  Compl. at ¶ 6, D.  In this

Circuit, a permanent injunction is appropriate when:

> . . . the Court considers a modified iteration of the
> factors it utilizes in assessing preliminary
> injunctions: (1) success on the merits, (2) whether
> the plaintiffs will suffer irreparable injury absent an
> injunction, (3) whether, balancing the hardships,
> there is harm to defendants or other interested
> parties, and (4) whether the public interest favors
> granting the injunction.  *Mova Pharm. Corp. v.
> Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

20

(i)      The Plaintiff will not succeed on the merits of the case

The case law is clear in that the BOP ban on sexually explicit materials and nudity is justified by the security of the institution.  The regulation satisfies the First Amendment reasonableness test and does not violate plaintiff's rights.  Similarly, the institution's limitation on the number of stamps plaintiff can purchase is justified by the institution's security concerns, satisfies the Turner test and does not violate the First Amendment rights of the plaintiff.

(ii) Plaintiff has not demonstrated irreparable injury

In this case, Plaintiff has yet to explain how an injunction will prevent immediate and irreparable harm.  The Plaintiff must not only show that the alleged harm "will in fact occur" but must also show that the injury complained of is "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Plaintiff has not demonstrated the type of irreparable and imminent harm necessary to warrant relief.

(iii) Balancing the hardships, there is harm to defendants or other interested parties

The relief Plaintiff seeks would substantially injure the BOP by compromising its decision making authority under the statutes and case law.  BOP regulations and practices regarding sexually explicit materials and nudity as well as the limitation on stamps are justified and necessary to maintain the security of its institutions.

(iv)      Whether the public interest favors granting the injunction

The public interest does not favor the granting of the injunction.  The matters challenged by the Plaintiff are matters within the exclusive authority of the BOP.  The BOP's decisions regarding this inmate have been in compliance with BOP policy and statutory mandate.  Thus,

21

the public interest in having safe prisons administered by the BOP would be safeguarded by the denial of this request for injunctive relief.

## CONCLUSION

Based on the above reasons, Defendants respectfully request that Plaintiff's complaint be dismissed with prejudice or, in the alternative, that this matter be transferred to the District of Minnesota.

March 24, 2007                    Respectfully submitted,

  /s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

  /s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)