UNITED STATES DISTRICT COUERT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
JUL - 7 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STEPHEN C. BALLARD,    )
                       )
    Plaintiff,         )
                       )
vs.                    )    Civil Action No. 07-1166(RWR)
                       )
CAROL HOLINKA, et al., )
                       )
    Defendants.        )

PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AND TRANSFER

COMES NOW the Plaintiff, Stephen C. Ballard, and for his Response to the Motion to Dismiss as filed by the Defendants herein, submits the following arguments and authorities.

1. Plaintiff brings this action under 42 U.S.C. 1983 et sequitur, as a violation of his civil rights. He claims that his constitutional right to printed and pictorial materials were violated by the Bureau of Prisons, its agents, servants and employees, in abrogation of the First Amendment to the Constitution of the United States of America.

2. Plaintiff brings this action in the United States District Court for the District of Columbia, which has jurisdiction over the location where the final decision was made, regarding the subject matter of this action.

3. Plaintiff filed suit against all of the parties who took part in rendering the dicision which he attacks in this proceeding.

4. Plaintiff duly pursued all of his administrative remedies in this matter, as provided by law, and only after being refused at every level, he resorted to the courts to resolve his problem.

5. Defendants assert their various defenses in stating, among others, that the chosen venue is improper, that sovereign immunity bars this action against the BOP, that the Court lacks personal jurisdiction over Warden Holinka, that Plaintiff fails to state a claim, especially as to Defendant Lappin, and that his claims are barred by qualified immunity.

I

PLAINTIFF DOES PROPERLY STATE A CAUSE OF ACTION IN THIS MATTER, IN CONTRADICTION TO THE ARGUMENTS OF THE DEFENDANTS.

Plaintiff has plainly and forthrightly stated the bases for his complaints. He has satisfied all of the basic requirements of "who, what, when, where and why". Within the four corners of his complaint, he has alleged more than enough facts to sustain a cause of action against each of the Defendants to this action. A prisoner retains his First Amendment rights that are not inconsistent with incarceration. Pell v. Procunier, 417 US 817, 41 L.Ed 2d 495, 94 S.Ct. 2800(1974). An order that blanket prohibition against prisoners for the receipt of nude photographs of their wives and girl friends has been held to be invalid. Pepperling v. Risley, 739 F.2d 443 (9th Cir. 1984) To be "obscene", a publication must, taken as a whole, appeal to the prurient interest, must contain patently offensive depictions or description of specified sexual conduct, and on the whole, have no serious literary, artistic, political, or scientific value. Brockett v. Spokane Arcades, Inc. 472 US 491, 86 L.Ed 2d 394, 105 S. Ct. 2794 (1985), which relies upon and quotes from Miller v. California, 413 US 15, 37 L.Ed 419, 93 S. Ct 2607 (1973). The Bureau of Prisons practice of rejecting an entire publication can be inconsistent with the First Amendment. Abbott v. Meese, 824 F.2d 1166 (D.C. Cir. 1987). The burden is always on prison officials to justify the rejection of printed materials. Cofone v. Manson, 409 F. Supp. 1033, (Conn. 1976). Before there can be a bald restriction on a prisoner's First Amendment rights, it must be shown that the subject material is of the type which poses a threat to prison order.

A prisoner is not stripped of his constitutional rights at the prison gate, but, rather he retains all the rights of an ordinary citizen except those expressly, or by necessary implication are taken from him by the law. Procunier v. Martinez, 416 U.S. 396, 40 L.Ed 2d 224, 94 S. Ct 1800 (1974).

2

II

## PLAINTIFF HAS NAMED THE PROPER PARTIES TO THIS ACTION.

The government urges a tautology in their defense against the Plaintiff herein. They are claiming that he filed suit against too many unnecessary parties, when in truth and in fact, if he hadn't named all of the Defendants, then the government would probably have argued that the responsible parties had not been included. In his attempt to include all responsible parties, Plaintiff named all of the defendants herein, each of whom had a major part in reaching the final decision in this matter. In his allegations on the signature page of his petition herein, Plaintiff alleges that "the policies and practices which defendants Holinka, Watts, and Lappin enforce, authorize, and approve of violate the First Amendment of the United States Constitution."

Plaintiff duly alleges the violations of Warden Holinka at paragraph 19, on page 2 of the supplement to his "Pro Se" petition form. He states therein that "Warden Holinka enforced, or acquaiesced in the enforcement of, the rejection of the July 2006 issue of American Curves." He further alleges in the next paragraph that "Defendant Harrell Watts enforced, or acquiesced in the enforcement of, the rejection of the July 2006 issue of American Curves." Then in the very next paragraph, he further alleges that "Defendant Lappin enforced, or acquiesced in the enforcment of the rejection of the July 2006 issue of American Curves.

In his next few paragraphs, Plaintiff very succintly states the behavior and actions of each of the defendants in the "causal chain" in this action. He clearly states the various steps that he took, and the opposition that each defendant enforced in denying his requests. He further states very clearly, the reasons that each of the defendants gave for rendering their actions.

3

III

## VENUE IN THIS CASE IS PROPER

The United States District Court is an Article III court of limited jurisdiction. The advantage of access to the federal system lies, to a great extent, in the fact that a litigant can successfully engage in multi-state litigation. The state court systems in the United States are woefully inadequate to handle litigation that involves parties in several different states. If the Plaintiff had been required to file this cause of action in the local state court, in the county in which Waseca, Minnesota, is located, he would have been at a terrible disadvantage. Local courts, i.e., state district courts, have virtually no power outside the boundaries of the state in which they are located.

Under the rules of some states a subpoena cannot even be enforced against a party who is more than one county away. Plaintiff has filed a fairly complex action against three defendants in powerful positions. In order to properly litigate the issues that he is asserting against them, he needs every tool he can possibly utilize. On the very first page of the "Complaint for Violation of Civil Rights", a printed form provided by the clerk of the court for the United States District Court for the District of Columbia, the following statement is made:

> "Your complaint can be brought in this Court only if one or more of the named defendants is located within the District of Columbia."

First and foremost, Plaintiff is in federal district court because a federal question is involved. He is not relying on diversity as a basis for venue and jurisdiction. As an inmate at the Federal Correctional Institution at Waseca, Minnesota, his choices of venues were very limited. In selecting a venue, he must be aware of the doctrine of "forum non conveniens". Now that he has been transferred to the Satellite Camp at the Federal Correctional Institution at El Reno, Oklahoma, the matter of selecting the proper venue of federal district court is even more important.

On many occasions, a litigant in federal court faces an attempt by his opposition

4

to remove him or her to state court. In this action, in the case at bar, this is not a problem. The defendants would have no proper theory upon which to remove the Plaintiff to state court. It is likely that they would if they could, as this would create a tremendous disadvantage for the Plaintiff. The only defendant herein who is not a major functionary within the District of Columbia is Warden Holinka. She is no further away from the current forum that the Plaintiff. There are no witnesses who will have to travel any great distances, other that the Plaintiff and Defendant Holinka, as the facts of this case are fairly simple. The complexity of the case arises from the logistical problems of an inmate being able to enforce his subpoenae, and pursue his discovery efforts on a multi-state playing field.

It is well-known that Washington, D.C. is the central force of all activities involving federal agencies. From the time that President Harry S. Truman first had a plaque on his desk that read, "the buck stops here!", the rapidly-growing bureaucracy has circulated around Washington. The Central Office of the Bureau of Prisons is located there, and the defendants, Watts and Lappin perform their duties within that jurisdiction. Warden Holinka is located at an outpost that responds to the directives issued from the Washington offices.

Plaintiff has carefully followed all of the proper procedures in pursuing his remedies in this matter. He first of all attempted to resolve the matter informally, and then, after being denied, he appealed to Warden Holinka, who did not grant any relief. After following the process through the necessary steps of the regional appeal, Plaintiff found himself at the mercy of the highest level of the Bureau of Prisons, to wit: the National Inmate Appeals Administrator, Mr. Harrell Watts, and the Director of the Federal Bureau of Prisons, Mr. Harley Lappin. It was at this level that his relief was denied once and for all, and his need for relief through the courts began. Plaintiff would thus contend that venue in the District of Columbia is proper, since two of his defendants are located there, and he has made allegations against them that they violated his civil rights in that district.

IV

## DEFENDANTS ARE NOT ENTITLED TO IMMUNITY

The concept of governmental immunity originated in the formative days of legal proceedings in Merry Olde England. The time-worn catch-phrase, "The Crown can do no wrong" is centuries old. Every person in Olde England was a subject of the King, and was under the complete domination of the Crown. By the time of the American Revolution, this concept was eroding, and the United States of America was headed toward a form of government that derided such autocracy.

Defendants appear to be asserting their position as one of being totally immune from any and all wrongdoings on their part. This is simply not true. If this were the case, no inmate, or other citizen who has been mishandled by the police or other authorities, would ever have redress for their wrongs.

Upon entering prison, an inmate loses many rights. He is stripped of his right to vote, he can no longer "bear arms", and an older inmate cannot collect his social security benefits. However, all of his or her rights as a citizen are not left at the prison door. All inmates have a right under the Eighth Amendment to be safely imprisoned. They are entitled to good medical care, good nutrition, and sanitary living conditions. Inmates are also entitled to mail privileges, unless a dangerous situation is created, such as contraband, or even poisons being sent through the mail.

The Civil Rights Act greatly expanded the rights of prisoners in regard to their abilities to seek redress for wrongdoing against them. Guards must not use excessive force in enforcing the rules and regulations of a prison. If they do, they are exposed to certain rights and remedies in favor of the affected inmates. Even United States Marshalls have been sentenced to prison for abusing federal prisoners during airplane flights from one institution to another. (Western District of Oklahoma, approximately 1996, sentencing by United States District Judge Robin Cauthron.)

Many successful actions have been maintained against Bureau of Prison officials for lack of reasonable medical care, or "deliberate indifference", as it is usually categorized. Almost every institution in the Bureau of Prisons system has made

financial settlements with inmates at one time or another, based upon substandard medical treatment.

Immunity is not a blanket protection for all public officials against the allegations of inmates or other complaining parties. Sovereign immunity does not shield individual United States officials in their individual, as opposed to their official capacities. Williamson v. U.S. Department of Agriculture, 815 F.2d 368, (5th Cir. 1987) Kotarski v. Cooper, 799 F.2d 1342 (9th Cir. 1986). Likewise, state troopers, who arrest a subject without probable cause, are not entitled to qualified immunity in civil rights actions based on false arrest. McIntosh v. Arkansas Republican Committee, 816 F.2d 409 (8th Cir. 1984), Malley v. Briggs, 475 U.S. 335, 89 L.Ed 2d 271, 106 S. Ct. 1092 (1986). A qualified immunity defense fails if unlawfulness is apparent in light of pre-existing law. Walsh v. Mellas, 837 F.2d 789 (7th Cir. 1988).

Agents of the Internal Revenue Service do not have absolute immunity, and not even the Attorney General of the United States has absolute immunity. Cameron vs. Internal Revenue Service, 773 F.2d 126 (1985), Pulliam v. Allen, 466 U.S. 522, 80 L.Ed 2d 411, 105 S.Ct. 2806 (1985). Defendants have argued that the doctrine of respondeat superior protects one of the defendants in this cause of action, and Plaintiff will concede that, under certain circumstances, the doctrine of respondeat superior does not apply in federal civil rights actions. However, supervisory offices can be held leable under respondeat superior theory if they fail to train or control subordinates who cause injury to an inmate. White vs Farrier, 849 F.2d 322, (8th Cir. 1988). The mere allegation of the defense of respondeat superior is not a fatal blow to Plaintiff's complaint herein, as the burden of proof of satisfying the affirmative defense of immunity is on the prison officials. Williams v. Lane, 851 F.2d 82 (7th Cir. 1988). A prosecutor who holds an inmate fifty-two days beyond his release date is not protected by absolute immunity. Allen v. Lowder, 875 F. 2d 82 (4th Cir. 1989). The Eleventh Amendment does not provide immunity for state officials who have been sued in their personal capacities. Dube v. State U. of New York, 900 F. 2d 587 (2nd Cir 1990)

V

PLAINTIFF PROPERLY STATES A CAUSE OF ACTION CONCERNING THE STAMP
LIMITATION THAT WAS ENFORCED AT FCI WASECA

It is a regular procedure in the Federal Bureau of Prisons to take away privileges that are routinely granted to inmates. This type of discipline is imposed in order to protect the safety and security of the various institutions. In any given week in any certain prison, it is not uncommon for at least one inmate to lose his right to purchase snacks and other goods at the institutional commissary. Loss of visitation rights and telephone privileges is another common form of punishment for someone who has violated the rules of the institution. However, the "worst inmate in America", Thomas Silverstein, is still entitled to receive and send mail, in spite of the fact that he has killed a guard and several other inmates in separate incidents. (See The Hot House; Life Inside Leavensorth Prison).

In Program Statement 4500.04(e), it is stated as follows:

"The commissary shall ordinarily sell no more than 60 postage stamps (for first-class, domestic, one-once mailing), or the equivalent per Commissary visit. An exception may be made where visits are limited to one per week or less, in which case, additional purchases of stamps may be authorized by the Associate Warden or person of equivalent rank. This authority may not be delegated below the Unit Manager level."

It is obvious from the provisions of this program statement that the concern lies with granting more that 60 stamps per week, rather than contemplating a reduction to less than 60 stamps per week. All of the suggestions set forth by the Defendants as to possible gambling, sales of contraband, and other bartering with stamps are affirmative defenses which must be proven in court.

The right to purchase an appropriate amount of stamps is one that is protected by the law. Prisoners do not lose a broad sweep of their First Amendment rights by virtue of their confinement. Abdul Wali v. Goughlin, 754 F.2d 1015 (2d Cir. 1985).

Likewise, prisoners have a right to correspond with their legal counsel. <u>Washington v. James</u>, 782 F.2d 1134 (2nd Cir. 1986). The restriction of purchase of stamps is actually an interference with inmates' mail, and an allegation that various prison officials have interfered with inmates' mail privileges does state a civil rights claim for compensatory relief. <u>Purcell v. Coughlin</u>, 805 F. 2d 126 (3rd Cir. 1986). Until such time as the prison officials can show that Plaintiff has created a hazard to the institution, the above-cited Program Statement should be adhered to faithfully.

<u>CONCLUSION</u>

Based upon the arguments and authorities as set forth herein by the Plaintiff, it is hereby requested that the Court overrule the Defendants' Motion to Dismiss Complaint or In The Alternative to Transfer, and for all other proper relief.

Respectfully submitted,

*/s/ Stephen C. Ballard*
Stephen C. Ballard, Plaintiff Pro Se
Register No. 10720-031
Camp El Reno, P.O.Box 1500
El Reno, OK 73036

<u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that a copy of the above and foregoing Response was mailed on this 29th day of June, 2008, by first-class mail, with postage prepaid, to Kenneth Adebonojo, AUSA, Judiciary Building, 555 Fourth St. N.W., Civil Division, Washington, D.C. 20530.

*/s/ Stephen C. Ballard*
Stephen C. Ballard